# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN  DIVISION

| | |
|---|---|
| **JOHNNA K. TARVER,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| v. ] | |
| ] | **CV-07-BE-1570-E** |
| **SOUTHERN DEFENSE SYSTEMS,** ] | |
| **INC.,** ] | |
| **Defendant.** ] | |
| ] | |
| ] | |
| ] | |

## MEMORANDUM OPINION

This matter is before the court on "Plaintiff's Revised Petition for Attorneys' Fees and Memorandum in Support" (doc. 100).  This court had denied Plaintiff's original petition, because it did not provide the court with sufficient information to make a fee determination; however, the court granted Plaintiff leave to file the revised petition currently before the court.  Defendant Southern Defense Systems, Inc. ("SDS") opposed the revised petition (doc. 101).  For the reasons stated in this Memorandum Opinion, the court will GRANT IN PART and DENY IN PART Plaintiff's petition.

Tarver seeks recovery of her attorneys' fees under 42 U.S.C. § 2000e-5(k), which provides that "the court, in its discretion, may allow the prevailing party. . .a reasonable attorney's fee as part of the costs. . . ." SDS argues that the court should deny Tarver's petition because she did not obtain a successful outcome or, alternatively, that Tarver obtained such limited success that the court should sharply reduce the "grossly excessive" attorney fees

1

claimed..

The Supreme Court of the United States has explained that "plaintiffs may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (quoting *Nadeau v. Gelgemoe*, 581 F.2d 275, 278-179 (1st Cir. 1978)); *see Texas State Teachers Ass'n*, 489 U.S. 782, 782-83 (1989).  The Court has further stated that to reach "prevailing party" status, the "plaintiff must obtain an enforceable judgment against the defendant from whom fees are sought." *Farrar v. Hobby*, 506 U.S. 103, 111 (1992).  Applying this guidance, the court finds that Tarver's enforceable judgment against SDS for lost wages in the amount of $8,500, in accordance with the jury verdict in her favor, entitles her to "prevailing party" status.

Having determined that Tarver is a prevailing party, the court must next evaluate the reasonableness of the fee requested.  The "starting point" in the objective determination of the value of lawyers' services is to calculate a "lodestar" figure, that is  "to multiply hours reasonably expended by a reasonable hourly rate." *Norman v. The Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Hensley*, 461 U.S. at 433).

### A.  Reasonable Hourly Rate

Plaintiff's petition includes tables of attorney fee totals, including hours worked on this case as well as those attorneys' hourly rates customarily charged by the firm of Capell & Howard, P.C.  She requests that the court find those customary hourly rates to be reasonable but also requests that the court upwardly adjust the customary hourly rates.  The court will first address the reasonableness of the customary hourly rates. Defendant's counsel did not

specifically object to Capell & Howard, P.C.'s customary rates but did object to the upward adjustment of those rates and to Tarver's reliance on an opinion involving an FLSA case – not a Title VII case –  to support the upward adjustment.

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Norman*, 836 F.2d at 1299 (citing *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984)).  The burden of producing satisfactory evidence that the rates proffered coincide with prevailing market rates rests upon the petitioner.  *Norman,* 836 F.2d at 1303; *NAACP v. City of Evergreen*, 812 F.2d 1332, 1338 (1987).

To meet that burden, petitioner must offer "more than the affidavit of the attorney performing the work." *Norman*, 836 F.2d at 1299.  Satisfactory evidence would "speak to rates actually billed and paid in similar lawsuits" and can be adduced through either opinion evidence or direct evidence of lawyers' fees charged in similar cases. *Id*.  The relevant legal community is the community in which the district court sits, which would be the Northern District of Alabama in this case.  *See Turner v. Sec'y of Air Force*, 944 F.2d 804, 809 (11th Cir. 1991) (stating that the relevant market rate was the customary fee in the locality in which the district court sits, and not the national market rate); *Knight v. State of Alabama*, 824 F. Supp. 1022, 1027 n. 1 (N.D. Ala. 1993)("The relevant legal community is the area in which the court sits, which in this case is the Northern District of Alabama.").  The district court has discretion to "interpolate the reasonable rate based upon an analysis of the skills enumerated . . . which were exhibited by the attorney in the case at bar," and the market rates in the relevant community; where the submissions regarding reasonable rates are inadequate, the court may rely on its own expertise.

*Norman*, 836 F.2d at 1301 & 1304; *see Natco Ltd. Partnership v. Moran Towing of Fla., Inc.*, 267 F.3d 1190, 1196 (11th Cir. 2001) (stating that the district court has discretion in determining the amount of attorney's fees awarded); *Dumas v. Tyson Foods, Inc.*, 139 F. Supp. 2d 1243, (N.D. Ala. 2001) (adjusting attorney fee hourly rates based upon such factors as experience, similar rates that the court had previously awarded, the existence of a contingency fee contract, and other *Johnson* factors).

  In the instant case, Terrie Biggs seeks to recover attorney's fees based on hourly rates ranging from $125-$160 per hour beginning in February 2005, when she had two-and-a-half years of experience, through 2009, when she had seven years of experience.  Supporting the reasonableness of these rates are the affidavit of Nancy Perry, currently counsel for the AEA, asserting that the range of $125-$160 per hour is reasonable in the Northern District of Alabama for an associate with seven years of experience; the affidavit of William J. Baxley, senior partner in the law firm of Baxley, Dillard, Daughin, McKnight & James, asserting that the range of $140 to $160 per hour is reasonable in the Northern District of Alabama for an associate with similar skills and experience; and the affidavit of Candis A. McGowan, counsel with the law firm of Wiggins, Childs, Quinn & Pantazix, LLC, asserting that the range of $200 to $300 per hour is reasonable in the Northern District of Alabama for an associate with seven years of experience and that Ms. Biggs's hourly rate range form $125-$160 is appropriate and that a premium rate above her normal billing rates is appropriate.  The court notes that, according to Ms. Biggs's affidavit, she began practicing in June of 2002; therefore, only in the last four to five months has Ms. Biggs achieved seven years of experience.  In any event, the court finds that Ms. Biggs's requested hourly rate of $125-$160 is reasonable and in accordance with the prevailing market

rate in the Northern District of Alabama for similar services by lawyers of reasonably comparable skills, experience, and reputation.

George Beck seeks to recover attorney's fees based on an hourly rate of $295 and attests to having over 40 years of legal experience with particular experience in litigating complex legal issues including civil rights cases. Supporting the reasonableness of his hourly rates are affidavits from the same affiants: Nancy Perry asserts that his proposed hourly rate is reasonable; Bill Baxley asserts that the prevailing market rate for an attorney of his experience in the Northern District of Alabama is $475 - $600 per hour; and Candis McGowan attests to the appropriateness of his hourly rate of $295 and to the prevailing market rate in the Northern District of Alabama as $400 to $600 per hour for attorneys of comparable experience. Ms. McGowan also opines that a premium rate above the normal hourly billing rates would be appropriate in this case. The court finds that Mr. Beck's requested hourly rate of $295 is reasonable and in accordance with the prevailing market rate in the Northern District of Alabama for similar services by lawyers of reasonably comparable skills, experience, and reputation.

William Cunningham seeks attorney fees at an hourly rate of $140 per hour. According to Ms. McGowan's affidavit, Mr. Cunningham has/had two years of legal experience. Mr. Beck's affidavit states that the current Capell & Howard billing rate for associates ranges from $140 per hour for a first year associate to $180 per hour for a sixth year associate, and Ms. McGowan's affidavit states that $140 per hour is reasonable for a two year associate. The court finds that Mr. Cunningham's requested hourly rate of $140 is reasonable and in accordance with the prevailing market rate in the Northern District of Alabama for similar services by lawyers of reasonably comparable skills, experience, and reputation.

Bruce Downey has practiced law over three-and-a-half decades and, in addition to being licensed to practice law in Alabama, is also licensed in North Carolina and the District of Columbia. He requests an hourly rate of $280.00 per hour. Ms. McGowan's affidavit opines that his hourly rate is reasonable and appropriate. The court finds that Mr. Downey's requested hourly rate of $280 is reasonable and in accordance with the prevailing market rate in the Northern District of Alabama for similar services by lawyers of reasonably comparable skills, experience, and reputation.

Chris Weller has practiced law for over two decades and requests an hourly rate of $240.00 for his work in this case. Ms. McGowan's affidavit opines that his hourly rate is reasonable and appropriate. The court finds that Mr. Weller's requested hourly rate of $240 is reasonable and in accordance with the prevailing market rate in the Northern District of Alabama for similar services by lawyers of reasonably comparable skills, experience, and reputation.

Lynette Burkey requests attorney/paralegal fees at an hourly rate of $90.00 per hour, providing a supporting affidavit. Further, the petition requests attorney fees for the work of Treasure Bailey and Julie Davis, and although the petition does not specifically identify the position of Ms. Bailey and Ms. Davis, based on their billing rates, they are apparently also paralegals for the firm of Capell & Howard. Ms. Bailey requests hourly billing rates of $70.00 and $90.00, and Ms. Davis requests an hourly billing rate of $80.00. Although Ms. Burkey attests to having over 20 years of experience as a "paralegal *or* legal secretary," she does not state the portion of the 20 years that falls under paralegal experience. (doc. 100-7, ¶ 2) (emphasis supplied). She also specifically states that as of September of 2009, she has "worked as a paralegal for George L. Beck, and Terrie S. Biggs for two years." (doc. 100-7, ¶ 2 & 3).

Accordingly, the testimony establishes that she has at least two and a half years of paralegal experience, but does not specify her paralegal experience outside of this case; the court cannot determine from her affidavit whether this case represents her first experience in working as a paralegal. In addition, Tarver has presented no evidence about the experience of Ms. Bailey or Ms. Davis, and has failed to provide evidence about the prevailing hourly rates for paralegals in the Northern District of Alabama. Without more specific information about the paralegal experience of Ms. Burkey, Ms. Bailey and Ms. Davis, the court would be guessing about the appropriate rate for their services.

Even if the court were to arrive at an appropriate hourly rate for these particular paralegals, the court would still need to determine that the work represented on the billing statement was traditionally performed by an attorney. *See, e.g., Miller v. Kenworth of Dothan, Inc.*, 117 F. Supp. 2d 1247, 1258 (M.D. Ala. 2000). However, the court's examination of the narratives next to the paralegal time entries on the billing statement does not establish that their work is the type traditionally performed by an attorney. The vast majority of the paralegal time involves work consistent with general secretarial work: meeting with and receiving directions from firm attorneys, making and receiving telephone calls and emails; drafting letters; setting up depositions; organizing files; calendaring; and mailing packages. The court finds, in its discretion, the Plaintiff has not met her burden of establishing that the paralegals' hourly rates were reasonable and that their time was properly recoverable as attorney fees.

Finally, the petition requests an hourly billing rate of $85.00 for law clerks. The evidence does not reflect the law clerks' levels of experience or the prevailing hourly rate for law clerks in the Northern District of Alabama. Accordingly, the court finds, in its discretion, that Tarver has

not met her burden of establishing that the law clerks' hourly rates were reasonable and that their time was properly recoverable as attorney fees.

In summary, the court accepts as reasonable the hourly rates that the firm of Capell & Howard, P.C. charges for the attorneys of that firm: Terrie S. Biggs, George Beck, William Cunningham, Bruce Downey, and Christopher Weller.  However, the court finds that Tarver has not met her burden of establishing that the billing rates of the paralegals and law clerks are reasonable and properly charged as attorney fees.

### B.  Reasonable Hours Expended

The next step in computing the lodestar figure is to establish the number of hours reasonably expended.  *Hensley,* 461 U.S. at 433.   The Supreme Court requires a petitioner to exercise "billing judgment" in the hours submitted; "[h]ours not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." *Id.*  at 434 (quoting *Copeland v. Marshall*, 641 F.2d 880, 891 (1980) (en banc) (emphasis in original)). However, if the petitioner submits hours that "are excessive, redundant, or otherwise unnecessary," the court should reduce the number of hours accordingly. *Id.* at 434.   The decision about what hours are reasonably necessary "must be left to the discretion of the court," but if the court disallows fees for work performed, it must explain which hours are disallowed and why they are improper. *Norman*, 836 F.2d at 1304.  The court should evaluate the time and labor required to litigate the matter as well as the skill and experience of the attorneys. *Simpleville Music v. Mizell*, 411 F. Supp. 2d 1158, 1163 (M.D. Ala. 2007) (citing *Johnson*, 488 F.2d at 718).

In the instant case, Tarver's petition attached attorney time records totaling 696.60 hours

and non-attorney time records totaling 180.9 hours over a period of four-and-a-half years. (doc. 100, at 13). Multiplied times billing rates, the attorneys fees total $142,853.00 reduced by the hours identified as related to EPA and retaliation claims, resulting in a total adjusted attorney fee request of $141,208.50. The court has examined the hours submitted and considered the objections to them, and acknowledges at the outset that the total number of hours billed on this case is excessive for a typical employment discrimination case.

With that acknowledgment, the court finds that the only glaringly "unnecessary" hours are the 2 hours that Biggs spent (at the hourly rate of $160.00) personally driving the complaint to Birmingham for filing on 8/29/07. The submissions fail to explain *why* counsel could not have planned ahead and mailed the complaint. (docs. 100-2, at 7; 97, at 9).

The court finds as redundant Terrie Biggs's billing for 3 hours attending Cheng's deposition that her senior partner, Mr. Beck, was taking. (doc. 100-2, at 19).

In determining the reasonable number of hours, the court should also deduct time spent on unsuccessful claims, unless those claims and the successful ones share "a common core of facts or . . . related legal theories" that make division of hours on a claim-by-claim basis impractical. *Hensley,* 461 U.S. at 435. Where the lawsuit presents "distinctly different claims for relief that are based on different facts and legal theories. . ., work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'" *Id.* (quoting *Davis v. County of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (C.D. Cal. 1974)). Because Congress intended to limit awards to prevailing parties, the law treats these discrete, unsuccessful claims as if they had been brought in separately-filed cases, and awards no fees for work on them. *Id.* The petitioner "should maintain billing time records in a manner that will enable a

9

reviewing court to identify distinct claims." *Id.* at 437.

In the instant case, Tarver's Complaint contained six counts: Count I - gender-based violation of Equal Pay Act; Count II - violation of Title VII for gender-based disparate treatment of workers with care-giving responsibilities; Count III - violation of Title VII for gender-based pay disparities; Count IV - violation of Title VII for gender-based constructive discharge; Count V -violation of Title VII for gender-based retaliation; and Count VI - violation of the ADA.  The court granted summary judgment in favor of SDS as to counts involving pay discrimination (Counts I and III), retaliation (Count V) and the ADA (Count VI), and Tarver proceeded to trial and received a jury verdict on only two of the six counts.  SDS argues that the court should deduct the hours Tarver's counsel spent on the four unsuccessful claims, and because counsel failed – with a few exceptions – to maintain billing records identifying clearly what time was spent on which claim[1], SDS asserts that the court should disallow any entries that do not expressly state a relationship to the successful claims or, at a minimum, reduce the attorneys' time claimed to one-third of the time submitted.  (doc. 101 ¶¶ 12, 13, & 14).

In her revised Petition, Tarver acknowledges that the EPA claim (Count I)  and Title VII retaliation claim (Count V) were "separate discrete, unsuccessful claims." (doc. 100, at 8-9).  The revised petition, therefore, deducts a mere 21 hours and $3,424 for the EPA claim and an even sparser 7.5 hours and $1,220.50 for the retaliation claim. However, Tarver argues that the other two unsuccessful claims were  "derived from a common nucleus of operative facts to the successful constructive discharge cause of action and Title VII gender discrimination," and thus,

---

[1] Because the time record entries in its first petition only occasionally designated a relationship to specific claims, Tarver's counsel went back over the time entries and added handwritten deductions for the EPA and retaliation claims

she declines to deduct for any work attributed to those unsuccessful claims.

Although the court accepts Tarver's acknowledgment regarding the EPA and retaliation claims, the court is not convinced that the 28.5 hours identified and deducted for those claims is sufficient and further, disagrees with Tarver's conclusion that she need not deduct work on the other two unsuccessful claims. The court finds that the Title VII pay claim (Count III) was distinct and separate from the other successful discrimination claims not only because of its narrow focus on Tarver's pay rate compared to that of male welders but also because the alleged discrimination emanated from a separate source. The evidence revealed that the decision maker who set the pay rate for the welders – Wil Sheffield – was different from the decision makers whose discrimination formed the basis of the other claims – Cheng and Chang.

Regarding the ADA claim (Count VI), the legal issue on summary judgment – which ultimately resolved the claim and resulted its dismissal – turned upon whether Tarver failed to exhaust her administrative remedies when she did not include disability discrimination in her EEOC charge. This issue is obviously unique to the ADA claim. The court finds that Tarver's ADA claim was sufficiently discrete and separate from the discrimination claims remaining after summary judgments, and that billing on that claim should be deducted.

Having determined that the four unsuccessful claims were discrete and separate from the two successful claims, the court must determine the best means of deducting work on those four claims. With some exceptions, most of which involve legal research, Petitioner did not maintain billing records in a manner that would allow the court to identify the specific work on the four unsuccessful claims. In her revised petition's billing records, counsel for Petitioner did attempt to correct this failure by hand-writing onto the billing statements deductions of less than 30 hours

for work on the EPA and retaliation claims combined.  This court considers that amount of deductions to be paltry and inappropriate.  As noted previously, counsel made no attempt to identify and deduct work on the other two claims.  Without more specific information from Petitioner, the court has no reliable means of determining which of the remaining 800-plus hours were spent on what claims, and thus, the court will simply disallow 2/3 of the time billed up through the date of the ruling on the motion for summary judgment, February 24, 2009, recognizing that 2/3 of the claims were dismissed at the summary judgment stage.  The billings of Plaintiff's attorneys up to that point totaled $84,011.50.  However, when the court subtracts the time disallowed up to this point in the amount of $10,529 (paralegal and law clerk time; 2 hours driving the complaint to Birmingham; and 3 hours of redundant attendance at Tarver's deposition), the allowed billings total $73,482.50.  Disallowing 2/3 of the allowed total billings, the court reduces the amount to $24,494.17.  The reduced amount, plus the post-summary judgment billings of the attorneys (excluding paralegal and law clerk billings) through September 8, 2009 that total $51,640.50, equals a combined fee of $76,134.67.   The court will not award any additional fees for time spent in revising the petition for attorney fees.  As noted previously, the Supreme Court stated in its *Hensley* decision that "[h]ours not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority."  *Hensley v. Eckerhart*, 461 U.S.  at 434.  Because  a client would not expect to be billed for revising an inadequate petition, the court finds that additional charge is not reasonable.

       Therefore, the lodestar calculations result in total billings of $76,134.67.

### C.  Adjustments to the Lodestar

Tarver requests in her petition that the lodestar amount be adjusted *upward*.  She requests

that the hourly rate of Terrie Biggs be adjusted to the higher range supported by the affidavits of Attorneys McGowan and Baxley of between $200-$400 per hour, and further, that the hourly rate of George Beck be adjusted based on those same affidavits to a range between $400 and $600 per hour.

"The Supreme Court has instructed us that there is a 'strong presumption' that the lodestar figure, without any adjustment, is the reasonable fee award." *Kenny A. ex. Rel Winn v. Perdue*, 532 F.3d 1209, 1220 (11th Cir. 2008) (citing *Burlington v. Dague*, 505 U.S. 557, 562 (1992)). However, the Court has also acknowledged that, in some cases, the initial calculation of the lodestar "does not end the inquiry." *Hensley*, 461 U.S. at 434. In the process of determining the lodestar figure and whether it should be adjusted, the court is guided by the factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[2] The twelve factors read as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee in the community; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10 the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19. Many of the *Johnson* factors "are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*. 461 U.S. at 434 n. 9. *Upward* adjustments of lodestar figures only occur in "'rare' and 'exceptional' cases."

---

[2]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc), the Eleventh Circuit adopted as precedent all Fifth Circuit decisions handed down prior to the close of business on September 30, 1981.

*Pennsylvania v. Delaware Valley Citizens' Council for Clear Air*, 478 U.S. 546, 565 (1986). The "most critical factor" to take into account at this stage is the "degree of success obtained." *Hensley*, 461 U.S. at 436. Where a petitioner has succeeded on only some of his claims for relief, fees based on the initial lodestar calculation may represent an excessive amount. *Id.* The court is accorded discretion in making the determination of how much to adjust, or whether to adjust at all, and "no precise rule or formula" exists for the court to follow. *Id.* at 436-37.

In the instant case, Tarver requests an *upward* adjustment of the lodestar amount. However, the court finds that an upward adjustment is inappropriate; this case is not a rare and exceptional case when the lodestar amount is an inadequate fee. Rather, as the court will explain, the issue is whether the lodestar amount should be adjusted *downward*. Tarver achieved only partial success; she sought to recover on six theories, and only two survived summary judgment. Immediately prior to trial, her claimed damages list totaled $209,301, and due in part to this court's legal rulings during trial, Tarver's counsel reduced the jury demand in closing argument to a figure of $12,500 in back pay with an additional amount requested for compensatory damages. The jury returned a verdict of $8,500 in back pay with no award of compensatory damages. In light of that limited success, her request for attorneys fees of $141,208.50 appears excessive and even the reduced lodestar calculation of $76,134.67 dwarfs the amount of her judgment: by the reduced lodestar calculation, Tarver's attorneys would receive an award that is approximately nine times Tarver's jury verdict.

The limited judgment is particularly notable in light of the limited risk that this case posed. Any contingency fee case represents a risk, but this case was less risky than most discrimination cases for several reasons, including the existence of rare direct evidence of

discriminatory intent documented in part by EEOC material.   Although Plaintiff has characterized this case as "undesirable," the court does not understand that characterization in light of the EEOC documentation of discriminatory intent.

Further, this case does not fall into the category of cases where the monetary amount is almost irrelevant and the true victory is a more public benefit, such as a finding of discrimination that will affect company policy and potentially change the lives of many workers.  *See, e.g., Duckworth v. Whisenant*, 97 F.3d 1393, 1399 (11th Cir. 1996) (noting that "not all nominal damage awards produce purely pyrrhic victories" and recognizing that some small damage awards are valuable in promoting a public purpose).  While every finding of discrimination confers some public benefit in vindication of federal rights,  SDS is a small welding company, Tarver was the only woman welder who worked there, and the evidence indicated that women welders in the community were very rare.

Although Tarver insists that she brought the unsuccessful claims in good faith and points to their interrelation with the successful claims, these factors do not preclude the court from reducing the initial lodestar calculation.  As the Supreme Court explained in *Hensley,*

> [i]f, on the other hand, a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith.  Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion or skill.  Again, the most critical factor is the degree of success obtained.

461 U.S. at 436.  Keeping in mind this critical factor, the court finds that the initial lodestar figure to be excessive when viewed in relation to the results obtained.  Although Tarver did

prevail in the sense that she obtained a jury verdict finding gender-based discrimination, she obtained only a part of the relief she sought, in terms of both successful legal theories and monetary dollars. Keeping in mind the limited nature of Plaintiff's success, as well as the other *Johnson* factors, the court will further limit her attorneys' fees. Accordingly, the court, in its discretion, reduces the lodestar calculation from $76,134.67 to $57,000.00. The court will enter a separate Order consistent with this Memorandum Opinion.

Dated this 9th day of December, 2009.

/s/ Karon O. Bowdre
**KARON OWEN BOWDRE**
**UNITED STATES DISTRICT JUDGE**